INHABITANTS OF EASTON *vs.* INHABITANTS OF WAREHAM.

Bristol.　Oct. 30, 1879. — April 4, 1881.　COLT & FIELD, JJ., absent.

Under the Gen. Sts. *c.* 70, §§ 17, 18, if the overseers of a town, when notified that a person, whose settlement is supposed to be in that town, has become charge-able to the town sending the notice, and a request is made that he be removed, neglect in their answer to deny that the pauper has his settlement in their town, the town, in an action for the expenses of his support, is estopped to deny the fact of settlement.

The overseers of a town sent a notice to the overseers of another town that a female pauper, wife of J. S., "whose settlement is in your town," had applied for relief, and requesting that she be removed. The answer acknowledged the receipt of the notice "in regard to the circumstances" of the pauper; stated that, "under the circumstances," they declined to pay the bill; and added that the woman, when married to J. S., was insane, and an inmate of the almshouse of the town sending the notice, and that the marriage was for the purpose of making their town responsible. *Held,* that the answer did not deny the settle-ment of the pauper's husband.

CONTRACT for expenses incurred in the support of Alma Frye, a pauper, from June 6, 1875, to September 9, 1875, and from August 7, 1876, to June 18, 1877. Trial in the Superior Court, before *Allen*, J., who reported the case for the determina-tion of this court in substance as follows:

It was admitted that Alma Frye was the wife of Stephen Frye. It appeared that the support was furnished as alleged in the declaration, and that the prices charged therefor were rea-sonable and just.

On July 20, 1875, the plaintiff sent to the overseers of the poor of the defendant the following notice, signed by one of its overseers of the poor: "To the Overseers of the Poor of the Town of Wareham. Alma Frye, wife of Stephen Frye, whose legal settlement is in your town, but now residing in this town, being in needy circumstances, has applied to this board for re-lief, which we have granted and charged to your town, and shall continue so to do until you remove or otherwise provide for her support."

On July 29, 1875, the plaintiff received the following reply signed by the overseers of the poor of the defendant: "Over-seers of the Poor, Easton. Yours of recent date at hand, and contents noted in regard to the circumstances of one Stephen

Frye's wife, residing in your town; under the circumstances, we decline to pay your bill, and shall continue so to do until we find that the law requires us to do so. At the time of the marriage, the woman, who is *non compos mentis*, was an occupant of your almshouse and under your charge. We have proof that the inhabitants of Easton winked at the performance, saying that this would take her from their town and throw her on this. Her mother says she will support her if she will go to her, but that is your concern, not ours. If you will please search the statutes, you will find that you have no claim that will stand law."

The plaintiff contended that the defendant was estopped, under its reply to the plaintiff's notice, from contesting the settlement of Alma Frye. The judge declined so to rule, and directed the jury to return a verdict for the defendant.

If the ruling was right, judgment was to be entered on the verdict; otherwise, the verdict to be set aside and case stand for trial.

*E. H. Bennett & H. J. Fuller*, for the plaintiff.

*E. Ames*, for the defendant.

LORD, J. The Revised Statutes and the General Statutes provided the mode in which a town where a pauper having no settlement therein was relieved could recover the expenses of such relief from the town in which the pauper had a settlement, and which was liable to support such pauper because of such settlement. Rev. Sts. *c.* 46. Gen. Sts. *c.* 70. These modes were almost identical in language and corresponded substantially with one of the modes prescribed by the St. of 1793, *c.* 59. These various provisions of law required that the overseers of the town furnishing the relief should notify the overseers of the town in which the pauper was supposed to have his settlement of the facts of that relief, and request the removal of the pauper to that place; and, if the overseers of the place thus notified did not within a prescribed time, two months, by a written answer addressed to one or more of the overseers of the notifying town, state their objections to such removal, the town thus notified was estopped to deny the settlement of such pauper.

It has never, we believe, been judicially determined what the nature of the objections must be. We think, however, that it

will be found in every case reported that the objection in fact was that the pauper had no settlement in the town notified; and that it is according to the universal understanding of all town officers and all concerned in the administration of the pauper laws that no objection can be made except the denial of the settlement. That is the only question which in law may be affected by the notice and answer. It is the only fact which is a defence, if supplies have been furnished by the notifying town to necessitous poor. It has been decided that, if the town notified makes no answer whatever, although it is estopped to deny the settlement of the pauper, it is not estopped to deny that the person to whom the supplies were furnished was in need of immediate relief. *New Bedford* v. *Hingham*, 117 Mass. 445. If, instead of making no answer, the overseers of the notified town should reply that it is true that the pauper who has been furnished with aid has a settlement in their town, but that they have objections to his removal; that such objections were not that he had no settlement there, but that they preferred that he should remain where he was and objected to removing him; certainly it would be inconsistent with the entire system of our pauper legislation and the interpretation of the laws upon the subject, to permit a town under such an answer to deny the settlement of the pauper; and we think that, although the language of the statute does not in words say that the town notified shall be estopped to deny the settlement of the pauper unless such denial is contained in the answer, yet that such is its true interpretation; that any other meaning would be useless and frivolous. So that the inquiry in every case, and the only inquiry as a condition precedent to a controversy on the subject is, Did the defendant town on notice deny the settlement? Such, practically, has always been the question, and, taking into view the legislation upon the subject, and such judicial decisions as have been made, it is the true question.

To determine whether the defendant town in this case is estopped to deny the settlement of the pauper, the only inquiry is, Did it deny the settlement in its answer? There are no direct words of denial. Town officers, in the discharge of their municipal duties, are not to be held to the most skilful and accurate use of language. They are selected from the ordinary pursuits

of life, and their language is used to convey their meaning and to do it in such mode as will be understood by those of similar pursuits. Although there may be no direct denial in words, yet if a fair and reasonable interpretation of the language used implies a denial, such denial is to be understood as made; so that the question presented for our consideration is, Does the letter, fairly construed, lead to the inference that the settlement is denied? We are constrained to say that it does not, but that, on the other hand, it carries with it a strong implication that Stephen Frye, the husband of the pauper, had a settlement in Wareham.

The answer commences as follows: "Overseers of the Poor, Easton. Yours of recent date at hand, and contents noted in regard to the circumstances of one Stephen Frye's wife, residing in your town; under the circumstances, we decline to pay your bill, and shall continue so to do until we find that the law requires us to do so." If the answer had stopped there, the phrase "under the circumstances" might perhaps be equivocal, and a different context might have implied a want of settlement as among the circumstances. The context, however, leads to no such implication, but, on the other hand, implies an admission of the settlement. The answer proceeds: "At the time of the marriage, the woman, who is *non compos mentis*, was an occupant of your almshouse and under your charge. We have proof that the inhabitants of Easton winked at the performance, saying that this would take her from their town and throw her on this." The only reasonable construction of this language is, "You had a worthless *non compos* in your almshouse, and we had a worthless pauper with a settlement in our town, and your people winked at the marriage of these two paupers, saying it would put them both on us, instead of allowing them to remain divided as they are, one to you and one to us." The remaining two or three lines of the letter refer rather to the status of the woman than to that of her husband, and there is nothing in them to import any different meaning as to the settlement of her husband. The most favorable interpretation that can be put upon the letter in behalf of the defendant is this: either that the form of a marriage with Stephen Frye had been enacted by a person incompetent to contract by reason of mental

imbecility, and that the marriage was therefore a nullity; or that a fraud had been perpetrated which had been participated in by the officials of the plaintiff town in such mode as prevented the liability to support the woman, as the wife of Stephen Frye, attaching to the defendant town.

If the defendant town shall think that either in law or in fact either of these defences may be available to it, it will have an opportunity to present its facts and its views upon the new trial; but it cannot be permitted under the answer of the overseers to deny the settlement of Stephen Frye.

*Verdict set aside, and case to stand for trial.*